Entered on Docket
September 01, 2010
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



Signed: August 31, 2010

_____
EDWARD D. JELLEN
U.S. Bankruptcy Judge
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                         Case No. 10-43080 EDJ
                                              Chapter 11
NMP CONCORD II, LLC,

                        Debtor./

DECISION

A final hearing was held in the above-captioned case August 18, 2010 on the motion of Mechanics Bank ("Mechanics") for relief from the automatic stay of Bankruptcy Code § 362.[1] Robert Kaplan and Walter Gouldsbury, III, appeared for Mechanics. Raymond Willis appeared on behalf of debtor NMP Concord II, LLC ("NMP"). The court, having considered the evidence presented at the final hearing, and for the reasons hereinafter discussed, will grant Mechanics's motion and lift the automatic stay.

---

[1] All further section references herein are to the Bankruptcy Code, 11 U.S.C. § 101 et. seq.

Decision

## I. Background

NMP filed its petition under chapter 11 of the Bankruptcy Code on January 14, 2010 in the Western District of Washington. The case was subsequently transferred to this court by order of the Honorable Karen Overstreet. Doc. 1. In its voluntary petition, NMP identifies the nature of its business as single asset real estate.[2] Doc. 2. According to its Schedule A, the debtor's primary asset is a 1.60 acre unimproved lot, located at 1990 Monument Boulevard and 1075-1085 Oak Grove Road, in Concord, California (the "Concord Property"). Id.

NMP entered into a lease agreement on May 4, 2006 with Thrifty Payless, Inc. (the "Rite Aid Lease") by which NMP agreed to improve the Concord Property by constructing a building to be used by the lessee as a Rite Aid drug store. Ex. L. Pursuant to an Amended and Restated Lease, NMP was to deliver the Concord Property, with improvements, no later than December 14, 2009. Ex. O. The Rite Aid Lease had expired by its own terms and was no longer in effect as of the petition date herein.[3]

NMP and Mechanics executed a promissory note on April 25, 2007

---

[2] Section 101(51B) defines "single asset real estate" as "real property constituting a single property or project ... which generates substantially all of the gross income of a debtor ...."

[3] Brent Nicholson, managing member of NMP, testified that Rite Aid extended the lease and delivery date to March 30, 2010, but did not produce documentary evidence of the extended delivery timeline. In any event, this extended deadline has also past.

Decision 2

in the principal amount of $7,300,000 to finance improvement of the Concord Property. Ex. A. The note was accompanied by a Construction Deed of Trust and Commercial Security Agreement granting Mechanics a first priority deed of trust in the Concord Property. Exs. B, C. The note matured on February 10, 2009. Ex. E. The last payment made by NMP on the loan was on June 2, 2009. Ex. I. Mechanics subsequently recorded its Notice of Default and Notice of Trustee's Sale. Exs. F, G. The balance owing on the note as of August 3, 2010, was $2,737,562.70. Ex. H. Interest is accruing on the balance at a rate of $656.12 per day. Id.

II. Discussion

Bankruptcy Code § 362(a) provides that filing a petition in bankruptcy operates as a stay of certain actions, including an act against property that secures an obligation owed by the debtor. By its motion, Mechanics seeks relief from the automatic stay in order to proceed with its sale of the Concord Property. Section 362(d) authorizes the bankruptcy court to grant such relief under three circumstances relevant here: where the debtor has no equity in the property and it is not necessary to an effective reorganization; cause, including lack of adequate protection; and, in the context of a single asset real estate case, where the debtor has not filed a confirmable plan or commenced monthly payments within ninety days of filing the petition.

1. § 362(d)(2).

Bankruptcy Code § 362(d)(2) provides that the court shall grant relief from the automatic stay with respect to a stay of an act

Decision 3

against property if the debtor does not have equity in the property and the property is not necessary to an effective reorganization.

   A.   Equity

The Ninth Circuit Court of Appeals has held that the proper definition of "equity" for purposes of § 362(d)(2)(A) is the difference between the value of the property and all the encumbrances upon it. Stewart v. Gurley, 745 F.2d 1194, 1196 (9th Cir. 1984). Pursuant to § 362(g), Mechanics has the burden of proof on the issue of the debtor's equity in the property and NMP has the burden on all other issues. Mechanics presented a written appraisal report and testimony from general real estate appraiser Colin Morrison ("Morrison") in support of its position that the debtor has no equity in the Concord Property. See Ex. K. Morrison testified that the highest and best use of the Concord Property was commercial development. His appraisal report concludes that the "as is" value of the Concord Property was $22 per square foot, or $1,530,000, on January 12, 2010. Id. Morrison testified that he utilized the "sales comparison" method of appraising the Concord Property, whereby he relied on data from sales of similar real properties in order to determine the likely sale price for the Concord Property. Morrison testified that this method was best suited to valuing the Concord Property, compared with other generally accepted appraisal methodologies.[4] Morrison relied on six comparable land sales with

---

[4] Morrison's report identifies two other methodologies, the income capitalization approach, in which the income generated by
(continued...)

Decision                                4

prices per square foot ranging from $15 to $25 to arrive at his appraised value for the Concord Property. Id.

NMP presented testimony from commercial mortgage broker Andrew Schwisow ("Schwisow") in support of its position that NMP has equity in the Concord Property. Schwisow did not provide a written report, but testified that in his opinion the "as is" value of the Concord Property was $45 per square foot, or $3,137,220. Schwisow's opinion is based on the income-earning potential of the Concord Property taking into account its corner location, the fact that the Concord Property is entitled to be developed as a drug store, and the premium associated with undeveloped land located in a densely developed metropolitan area like Concord. Schwisow criticized Morrison's use of comparable land sales that did not reflect the enhanced value of undeveloped property located in a densely developed area, and the corner lot location. Schwisow testified that he was able to find real properties listed for $47 to $67 per square foot, and concluded that those prices more accurately reflected the value of the Concord Property.

On cross-examination, Schwisow testified that his methodology for determining the value of the Concord Property utilized a combination of his opinion of the income potential of the property, his past experience brokering real estate transactions, and

---

[4](...continued)
real property is used to calculate its present value, and the cost approach, in which the cost of developing a unique project for which there are very few comparable properties is analyzed.

Decision 5

comparable sales listings. Schwisow testified that his method is not a generally accepted appraisal method.

The court is persuaded by the Morrison appraisal. The court concludes that the sales comparison method, as presented by Morrison through testimony and written appraisal, is the superior method for valuing the Concord Property. By contrast, the Schwisow valuation of the Concord Property is based upon unconventional methodology, utilizes sales listings rather than consummated sales, and relies on a future income producing potential of the Concord Property that is speculative at best. The court therefore finds the current value of the Concord Property is less than the approximately $2.7 million owed by NMP on the Mechanics loan. Mechanics has accordingly met its burden of proving that NMP does not have any equity in the Concord Property.

B. Necessary to an effective reorganization.

The burden now shifts to NMP to demonstrate that the Concord Property is necessary to its effective reorganization. The United States Supreme Court has defined "necessary" as used by § 362(d)(2) as requiring the debtor to demonstrate, "a reasonable possibility of a successful reorganization within a reasonable time." United Savings Association of Texas v. Timbers of Inwood Forest Associates, LTD., 484 U.S. 365, 376 (1988).

The chapter 11 plan contemplated by NMP calls for repayment of the Mechanics loan in full on June 2, 2011, some ten months in the future. Brent Nicholson ("Nicholson"), the debtor's managing member, testified that he was in negotiations with a capital group

Decision 6

to obtain funding sufficient to pay the entirety of its debt to
Mechanics, as well as finance development of the Concord Property.
Nicholson further testified that he is in negotiations with Thrifty
Payless, Inc. regarding renewal of the expired Rite Aid Lease in
conjunction with Nicholson's development of eleven other Rite Aid
drug store sites. Neither set of negotiations have been reduced to
writing.

Under cross-examination, Nicholson testified that since the
fall of 2008 he has sent out between two and three hundred
informational packets to potential lenders regarding the Concord
Property, but these efforts did not generate additional financing.
Nicholson also testified that he approached three major banks in the
winter of 2009 regarding a refinance loan on the Concord Property,
but was not able to obtain such financing.

"While it is true that a relief from the stay hearing should
not be converted into a confirmation hearing, the 'effective
reorganization' requirement enunciated by the Supreme Court requires
a showing by a debtor that a proposed or contemplated plan is not
patently unconfirmable and has a realistic chance of being
confirmed. Courts usually require the debtor to do more than
manifest unsubstantiated hopes for a successful reorganization." <u>In
re Sun Valley Newspapers, Inc.</u>, 171 B.R. 71, 75 (9th Cir. BAP 1994)
(internal citations omitted). Nicholson has certainly made a
diligent effort to secure financing to enable NMP to develop the
Concord Property site. It is unfortunate that these efforts,
however determined, have not produced tangible results. In this

Decision 7

case, the court must conclude that the NMP plan of reorganization is speculative, and not capable of producing a successful reorganization within a reasonable time. The Concord Property is therefore not necessary to an effective reorganization, within the meaning of Timbers.

The court holds that Mechanics is entitled to relief from the automatic stay under § 362(d)(2) because NMP does have any equity in the Concord Property, and it is not necessary to an effective reorganization.

2. § 362(d)(1).

Bankruptcy Code § 362(d)(1) provides that the court shall grant relief from the automatic stay with respect to a stay of an act against property "for cause, including ... lack of adequate protection." Section 361 provides three non-exhaustive examples of adequate protection where the automatic stay results in a decrease in the value of an entity's interest in property: periodic cash payments, a replacement lien, or other relief that grants the entity the "indubitable equivalent" of the entity's interest in such property.

"Although the existence of an equity cushion as a method of adequate protection is not specifically mentioned in § 361, it is the classic form of protection for a secured debt justifying the restraint of lien enforcement by a bankruptcy court. In fact, it has been held that the existence of an equity cushion, standing alone, can provide adequate protection." In re Mellor, 734 F.2d 1396, 1400 (9th Cir. 1984) (internal citation omitted). In this

Decision 8

case, however, the court has concluded that NMP does not have any equity in the Concord Property with which to protect Mechanics's position. It further appears that Contra Costa County has a claim for property taxes owed on the Concord Property that are accruing in advance of Mechanics's claim. <u>See</u> Debtor's Schedule E, Doc. 2. The automatic stay is therefore decreasing in the value of Mechanics's interest in the Concord Property.

There is no equity cushion. NMP has not made any payment on the Mechanics loan since June of 2009, nor are any payments to Mechanics contemplated by the NMP chapter 11 plan until June of 2011. No evidence has been presented as to NMP's ability to offer Mechanics any replacement lien. In short, NMP has not adequately protected, and has presented no persuasive evidence that it can adequately protect, Mechanics's interest in the Concord Property.

The court holds that Mechanics is entitled to relief from the automatic stay for cause under § 362(d)(1) because Mechanics's interest in the Concord Property is not adequately protected.

3. § 362(d)(3).

Bankruptcy Code § 362(d)(3) provides that the court shall grant relief from the automatic stay with respect to a stay of an act against single asset real estate unless, within ninety days of the filing of the petition in bankruptcy, the debtor files a plan that has a reasonable possibility of being confirmed within a reasonable time, or commences monthly payments under the contract rate.

NMP is a single asset real estate debtor within the meaning of § 101(51B) because the Concord Property is its sole potential source

Decision 9

of gross income. As previously discussed, NMP is not making payments on its obligation to Mechanics, contractual or otherwise. NMP did file a plan of reorganization within ninety days of the petition herein, however, the court holds that this plan does not have a reasonable possibility of being confirmed within a reasonable time. This is because it impermissibly places all risk of loss on Mechanics by forcing Mechanics to wait until June 2011 to be paid on its loan or to delay foreclosure until that date in the event NMP is ultimately unable to procure financing with which to repay Mechanics. The June 2011 payment date contemplated by the NMP plan is particularly burdensome to Mechanics in light of the February 2009 loan maturity date for which it originally bargained.

The court holds that Mechanics is entitled to relief from the automatic stay under § 362(d)(3) because NMP is a single asset real estate debtor that is not paying Mechanics at the contract rate, and has not proposed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time.

III. Conclusion

For the foregoing reasons, the court holds that Mechanics is entitled to relief from the automatic stay under Bankruptcy Code §§ 362(d)(2), (d)(1), and (d)(3). The court requests counsel for Mechanics to submit a proposed order lifting the automatic stay.

**END OF DECISION**

COURT SERVICE LIST

Robert B. Kaplan
Walter W. Gouldsbury III
Jeffer Mangels Butler & Mitchell LLP
Two Embarcadero Center, Fifth Floor
San Francisco, California 94111-3824

Raymond E. Willis
Law Offices of Raymond E. Willis
P.O. Box 70214
Oakland, CA 94612

Decision 11